UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| BEATRIZ ACOSTA,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. **CV 05-6000-JWJ**<br><br>**FINDINGS OF FACT** |

## I. FINDINGS OF FACT

1. Plaintiff Beatriz Acosta brings this action against defendant United States of America pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671—80, seeking damages for personal injuries.
2. Prior to filing this action, plaintiff timely submitted an administrative claim in the amount of $750,000, which was denied.
3. On March 23, 2007, this Court ruled that plaintiff is limited to the $750,000.00 amount requested in her administrative claim.
4. Plaintiff alleges that she sustained severe injuries to her low back in a car

|     |     |     |
| --- | --- | --- |
| 1   |     | accident when a vehicle driven by an employee of the United States |
| 2   |     | Army hit a motorcycle and the motorcycle then slid into the front of a |
| 3   |     | Volvo station wagon in which plaintiff was a passenger. |
| 4   | 5.  | A man gave plaintiff a business card from the Law Offices of Anthony |
| 5   |     | Lopez (hereinafter "Mr. Lopez's office"). |
| 6   | 6.  | From the scene of the accident, plaintiff was taken to Olive View |
| 7   |     | Hospital where she was x-rayed and released later that evening. |
| 8   | 7.  | At Olive View, x-rays revealed that plaintiff had no fractures; she was |
| 9   |     | told to take Tylenol for her pain. |
| 10  | 8.  | Mr. Lopez's office referred plaintiff to all of her treating physicians, |
| 11  |     | except for the emergency room treatment she received at Olive View on |
| 12  |     | the day of the accident. |
| 13  | 9.  | Mr. Lopez's office told plaintiff that she had to receive treatment only |
| 14  |     | from the doctors they referred and could not seek treatment anywhere |
| 15  |     | else. |
| 16  | 10. | Mr. Lopez's office first sent plaintiff to the Fields Health Center for |
| 17  |     | chiropractic care. |
| 18  | 11. | Dr. A.M. Elbitash, the medical doctor at the Fields Health Center, |
| 19  |     | testified that when he examined plaintiff, she had none of the indications |
| 20  |     | for any surgical intervention for her low back. |
| 21  | 12. | Dr. Elbitash further testified that he was surprised to learn that plaintiff |
| 22  |     | had later undergone multiple surgeries on her back because "the CAT |
| 23  |     | scan didn't show that she needs all that." |
| 24  | 13. | After being discharged from the Fields Health Center, plaintiff was sent |
| 25  |     | by Mr. Lopez's office to Dr. Robere Missirian, an orthopedist. |
| 26  | 14. | Dr. Missirian testified that he released plaintiff from his care on August |
| 27  |     | 14, 2003; at that time, her condition had improved. |
| 28  | 15. | Dr. Missirian's final report states: "Ms Acosta no longer requires |

|   |   |   |
|---|---|---|
| 1 |  | orthopaedic intervention; however she may continue with Dr. Fields [the |
| 2 |  | chiropractor] until such time that her symptoms are stable for discharge." |
| 3 | 16. | Plaintiff did not seek any treatment for her low back for approximately |
| 4 |  | five (5) months. |
| 5 | 17. | Mr. Lopez's office next referred plaintiff to Dr. James Thomas, an |
| 6 |  | orthopedic surgeon at Pacific Hospital, who began treating plaintiff in |
| 7 |  | January 2004. |
| 8 | 18. | From January 2004 to June 2006, Dr. Thomas performed multiple |
| 9 |  | steroid injections, a lumbar discogram, a laser discectomy, two (2) two- |
| 10 |  | level lumbar fusion surgeries, and a hardware removal surgery on |
| 11 |  | plaintiff. |
| 12 | 19. | Dr. Thomas is no longer plaintiff's treating physician or expert witness. |
| 13 | 20. | Dr. Thomas suffered a stroke and reported that he has very little recall |
| 14 |  | memory. |
| 15 | 21. | Dr. Lytton Williams took over a part Dr. Thomas' practice and was |
| 16 |  | plaintiff's expert witness at trial. |
| 17 | 22. | Plaintiff also has had multiple CT scans, MRIs (static and dynamic), x- |
| 18 |  | rays (both static and flexion), and other diagnostic tests at Pacific |
| 19 |  | Hospital. |
| 20 | 23. | In addition to the treatment listed above, neurologist Dr. Russell Shah, |
| 21 |  | also of Pacific Hospital, performed a lumbar myelogram. |
| 22 | 24. | Dr. Gary Baker, an anesthesiologist, performed a blood patch on plaintiff |
| 23 |  | (for a spinal leak due to the first lumbar fusion), at Pacific Hospital |
| 24 |  | during this same time period. |
| 25 | 25. | Dr. Lytton Williams testified that plaintiff has psychological problems |
| 26 |  | and she needs to see a psychologist before any further medical |
| 27 |  | intervention. |
| 28 | 26. | On June 26, 2006, Dr. Thomas referred plaintiff to Dr. Mark Ezekiel, an |

|    |     |                                                                                 |
|----|-----|---------------------------------------------------------------------------------|
| 1  |     | anesthesiologist and pain management specialist, who recommended that           |
| 2  |     | plaintiff undergo a trial for a spinal cord stimulator.                         |
| 3  | 27. | As part of Dr. Ezekiel's assessment, a Minnesota Multiphasic Personality        |
| 4  |     | Inventory-2 ("MMPI") was administered.                                          |
| 5  | 28. | The results from this test revealed the following: plaintiff is severely        |
| 6  |     | depressed and the prognosis for either psychological or medical                 |
| 7  |     | intervention is guarded; conservative medical treatment is usually              |
| 8  |     | recommended under these circumstances; and plaintiff is highly skilled at      |
| 9  |     | frustrating and sabotaging the help of others and will often "shop" for         |
| 10 |     | physicians and/or therapists."                                                  |
| 11 | 29. | On April 20, 2006, Defendant's expert orthopedic surgeon,                       |
| 12 |     | Dr. S. Andrew Schwartz, performed an independent medical exam                   |
| 13 |     | ("IME") on plaintiff and reviewed her medical records and diagnostic           |
| 14 |     | films.                                                                          |
| 15 | 30. | Dr. Schwartz testified that plaintiff's multiple back surgeries and             |
| 16 |     | treatment to her low back were unnecessary.                                     |
| 17 | 31. | Dr. Schwartz testified that she could not have suffered any significant        |
| 18 |     | trauma to her lumbar region based on her description of the accident            |
| 19 |     | because there was no twisting component involved in the accident.               |
| 20 | 32. | Dr. Schwartz opined that plaintiff had a degenerative disc and was not         |
| 21 |     | an appropriate candidate for a surgical fusion because "you would be           |
| 22 |     | fusing everybody over the age of 55."                                           |
| 23 | 33. | Dr. Schwartz testified that plaintiff suffered a neck sprain as a result of    |
| 24 |     | the accident and that any back problems plaintiff has were not a result of     |
| 25 |     | the accident but were pre-existing conditions that were neither caused         |
| 26 |     | nor aggravated by the accident.                                                 |
| 27 | 34. | Before the accident, plaintiff sought treatment for various back                |
| 28 |     | complaints, shoulder complaints, body aches; she even participated in           |

1  physical therapy for her shoulder prior to the accident.
2  35. Prospectively, Dr. Williams has recommended pool therapy,
3      rehabilitation, and home exercises.
4  36. Dr. Ezekiel has recommended a trial for a spinal cord stimulator, which
5      Dr. Williams does not recommend.
6  37. Plaintiff went for treatment at Olive View on December 10, 2007 and
7      underwent another MRI.
8  38. The entry by the Olive View physician states: "I cannot account for the
9      patient's pain based on the MRI findings."

DATED:  March 31, 2009


                                            /s/
                                JEFFREY W. JOHNSON
                                United States Magistrate Judge